## Case No. 14,513.

### UNITED STATES ex rel. HYDE v. BANCROFT.

[6 Ben. 392; [1] 8 N. B. R. 24.]

District Court, S. D. New York. March, 1873.[2]

VIOLATION OF INJUNCTION — DAMAGES — ATTACHMENT—BANKRUPTCY.

1. In a bankruptcy proceeding, an injunction was issued, on a special petition of the petitioning creditors, enjoining a firm, of which B. was a member, and a firm, of which S. was a member, from prosecuting suits commenced by such firms respectively against the bankrupts, in Illinois, in each of which suits attachments had been issued, under which property of the bankrupts had been attached. The injunction was personally served on B. and on S. After such service, the proceedings under the attachments were continued to judgment, and the property was sold under execution. Proceedings were taken to punish both B. and S. for contempt in violating the injunction. S. set up, in defence, that the proceedings had been carried on by assignees of his firm, the assignment being made by a member of his firm then in Illinois, and who was not served with the injunction. B. set up that the further proceedings in his suit had been conducted by assignees of his firm, the assignment having been made by one D., a clerk of B.'s firm: Held, that it was competent for this court to restrain these attaching creditors from further proceeding against the property which they had attached as the property of the bankrupts.

[Cited in Re Duncan, Case No. 4,131; Re Irving, Id. 7,073.]

2. Both B. and S. had violated the injunction of the court by the further proceedings in the attachment suits.

3. Each of them, to purge his contempt, must show that he endeavored to stop the suit of his firm in Illinois, or that the claim had been, in fact, assigned before the injunction was served, neither of which things had been shown.

4. A fine to the amount of the value of the attached property, with interest, and the expenses of the contempt proceedings, including a proper counsel fee, must be imposed on each of them.

[Cited in Re Ulrich, Case No. 14,328.]

[Contempt proceedings by the United States ex rel. Leonard C. Hyde, assignee, against Edward W. Bancroft and Michael Steiner, for violation of an injunction.]

A. R. Dyett, for relator.

R. A. Pryor, for Steiner.

J. Sterling Smith, for Bancroft.

BLATCHFORD, District Judge. The violations of the injunction by both of the respondents are satisfactorily proved. The injunction of the 3d of April, 1869, which was served on each of them, restrained their respective firms from further proceedings in the actions brought in Illinois by their respective firms against the bankrupts, and wherein the property assigned by the bankrupts to Kaufman had been attached, so far as regarded proceedings against such property. This injunction was issued after the adjudication in bankruptcy, and it was entirely competent for the court to restrain these attaching creditors from further proceeding against the attached property, which, by attaching it, they recognized as the property of the bankrupts, and which by reason of the adjudication, this court had the authority to control. The creditors' petition for adjudication was filed on the 18th of March, 1869. The order of adjudication was entered on the 27th of March, 1869. The attachments were levied in January and February, 1869. They were, therefore, dissolved by the bankruptcy proceedings. Having authority, by virtue of the adjudication, to issue a warrant to its messenger, to take possession of all the estate of the bankrupts, and, among other property, of the property so attached as the property of the bankrupts, and to which the firms of the respondents made no claim except by virtue of the dissolved attachments, this court necessarily had the incidental and ancillary authority to enjoin these respondents and their firms from further proceeding against the attached property in the suits such firms had brought. The authority is derivable from the power given by the first section of the bankruptcy act [of 1867 (14 Stat. 517)], to collect and dispose of the assets, as well as from the power given to the court by the judiciary act [1 Stat. 73,] to issue all writs necessary for the exercise of its jurisdiction. This injunction was issued on a special petition to that effect, presented by the petitioning creditors after adjudication, and before the appointment of an assignee; and the court, having jurisdiction of the res, had authority to issue an injunction to restrain interference with such res.

The records of the court in Illinois show violations of this injunction by both of the parties. The record shows, that, on the 8th of June, 1869, Steiner's firm, by its attorneys, the same who had brought the suit and issued the attachment, entered a judgment in the suit against the bankrupts by default, after publication of notice, and caused a writ of inquiry to be issued and executed; that, on the 9th of June, 1869, a judgment was entered in the suit, that Steiner's firm recover of the attached property $3,416 35, and costs, and that a special execution issue to the sheriff for the sale of the attached property; that, on the 25th of June, 1869, by direction of the plaintiffs' attorneys, an execution was issued, which recited the issuing and levying of the attachment on property specified in the execution, and the entry of the judgment against the property, and the order of sale, and directed the sheriff to make the amount of the judgment and costs, $3,445 85, out of such property; that the sheriff sold the attached property for $1,548 05; and that, on the 21st of July, 1869, the said attorneys received from the sheriff thereon $1,451 28 "for assignees of plaintiffs' claim," as expressed in the receipt, the receipt being signed by them as "attorneys for assignees." Prior to the date of this receipt, the record makes no mention of any assign-

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court. Case unreported.]

ment, and such attorneys, prior to such date, appear as the attorneys for Steiner's firm, as plaintiffs.

This record makes out a case against Steiner of a violation of the injunction. It is suggested, that, before the injunction was served, Steiner had heard that the claim had been assigned by his firm, acting through his partner, in Illinois. If the claim was, in good faith, and in fact, assigned before the injunction was served, Steiner might, perhaps, not be responsible for the use of his name, by the assignee, to continue the prosecution of the suit. But not a particle of legal evidence is produced to show that any such assignment was ever made. The assignment is said to have been made by the partner in Illinois, to one of the plaintiffs' attorneys. But neither of those persons is produced to testify. The injunction, on its face, advised Steiner of the suit, and where it was brought, and by whom, and against whom, and what property had been attached in it. In violation of the injunction, Steiner's firm continued the proceedings against the property, and caused it to be sold, so that the assignee in bankruptcy was deprived of it. The proceedings in the suit were not resumed until two months after the service of the injunction. The only excuse Steiner gives is, that, having heard, before the injunction was served on him, that the claim had been assigned, he thought that he had no further interest in it. He handed the injunction to his lawyer, but did not advise his partner in Illinois of its service. It is not shown that he asked, or received, any advice from his lawyer in the premises. It was his duty, as a member of his firm, to have stopped the proceedings in the suit. On the facts of the case, he is as much responsible for their continuance, and for violating the injunction, as if he had personally directed that they should be continued, notwithstanding the service of the injunction. If this were not so, injunctions served on plaintiffs in suits, to restrain their prosecution, could easily be violated with impunity, by simple abstinence on the part of the plaintiffs from communicating knowledge of the injunctions to the attorneys prosecuting the suits. In the present case, Steiner, to purge his contempt, must show that he endeavored to stop the suit, or that the claim had, in fact, been assigned before the injunction was served. Neither of these things is shown.

The record of the court in Illinois shows, that, on the 8th of June, 1869, Bancroft's firm, by its attorney, the same who had brought the suit and issued the attachment, entered a judgment in the suit against the bankrupts, by default, after publication of notice, and caused a writ of inquiry to be issued and executed; that, on the 9th of June, 1869, a judgment was entered in the suit, that Bancroft's firm recover, of the attached property, $1,051 95, and costs, and that a special execution issue to the sheriff for the sale of the attached property; that, on the 28th of June, 1869, by direction of the plaintiffs' attorney, an execution was issued, which recited the issuing and levying of the attachment on property specified in the execution, and the entry of the judgment against the property, and the order of sale, and directed the sheriff to make the amount of the judgment and costs, $1,080 50, out of such property; that the sheriff sold the attached property for $1,051 95; and that, on the 21st of July, 1869, a person named Green, the same who was one of the plaintiffs' attorneys in the Steiner suit, and is said to have been the assignee of the Steiner claim, received from the sheriff thereon $962 20, under an order from the attorney for the plaintiffs, which directed the sheriff to pay such money to Green, "taking his receipt for me, as attorney for W. M. Ross, assignee," such receipt being given by Green, and being signed in the name of such attorney, as "attorney for W. M. Ross, assignee, by N. W. Green." Prior to the date of this receipt, the record makes no mention of any assignment, and such attorney, prior to such date, appears as the attorney for Bancroft's firm, as plaintiffs.

It appears, that, on the 26th of May, 1869, one Dunn, a clerk in Bancroft's firm, acting for it, assigned the claim to Ross, and notified the plaintiffs' attorney in the suit that he would thereafter receive his instructions from Ross. The injunction, on its face, advised Bancroft of the suit, and where it was brought, and by whom, and against whom, and what property had been attached in it. Bancroft's only excuse is, that he had, before the service of the injunction, put the matter of the collection of the claim into the charge of Dunn; and that, when the injunction was served, he sent it to the department in which Dunn was employed, "intending and supposing that it would be obeyed." He does not appear to have given any instructions to stop the suit. On the 14th of August, 1869, and not before, his firm received from Ross $885, and entered it on their books, and balanced and closed their account against the bankrupts. A more gross violation of an injunction than this cannot well be conceived. The party receives the injunction, gives no direction to stop the proceedings, permits the claim to be assigned, permits the attorney to be notified to receive instructions from the assignee, permits the suit to proceed and the property to be sold, permits the assignee to receive the proceeds, and, after that, permits the assignee to pay over a sum which is received in full satisfaction of the original claim, and of the assignment, and is within $77 20 of the entire proceeds. A person served with an injunction owes a different duty from this to the court whose process he thus tramples upon. It was Bancroft's duty to have stopped the proceedings in the suit at once and forever. Instead of that, he went on with them, and

profited by them, in as distinct a manner as if the subterfuge of a nominal assignment to Ross had not been resorted to. He was ordered, by the injunction, to refrain from further proceedings under the attachment. This required him affirmatively to take steps adequate to prevent such proceedings. It was in his power to do so. The injunction did not require him merely to abstain from taking affirmative personal steps to go on with the proceedings. It is a grave error to suppose that, if he personally took no steps to go on, he could refrain from taking any reasonably adequate measures to stop the proceedings, and leave it in the power of his employees to go on in his name, and yet escape the consequences of disobeying the injunction.

The evidence shows the value of the attached goods sold in the Steiner case to have been, at the time of the sale, $6,691 93. A fine of that amount, with interest thereon from July 21st, 1869, must be imposed on Steiner. The value of the attached goods sold in the Bancroft case is shown to have been, at the time of sale, $2,218. A fine of that amount, with interest thereon from the same date, must be imposed on Bancroft. In addition, the expenses of this contempt proceeding, including a proper counsel fee, to be ascertained by the clerk, on a reference, must be paid by them, as a fine.